# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NALEEN N. ANDRADE, M.D., | CIV. NO. 16-00684 DKW-KJM |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS COMPLAINT** |
| DARREN CHO, COUNTY OF HAWAI'I, BOBBY L. MACOMBER, THELMA MACOMBER, DARRYL GRACE SR., LEONA GRACE, TRAVIS LEINONAN, and DOE DEFENDANTS 1-20, | |
| Defendants. | |

On December 20, 2016, Plaintiff Naleen N. Andrade, M.D., filed a

Complaint (ECF No. 1) initiating the instant lawsuit under 42 U.S.C. § 1983. In

the Complaint, Andrade seeks damages for acts that, she alleges, were committed

"under color of law, with the intent and for the purpose of depriving Dr. Andrade

of rights secured under the Constitution and laws of the United States, including

false and unsubstantiated criminal charges being filed against Dr. Andrade . . . ."

Compl. ¶ 1. Before the Court are separate-but-related motions to dismiss

Andrade's complaint, which were filed by Defendants Bobby L. Macomber,

Thelma Macomber, Darryl Grace Sr., Leona Grace, and Travis Leinonan ("Private

Defendants"; ECF No. 8); and Defendants County of Hawaiʻi and Kona Police Officer Darren Cho ("County Defendants"; ECF No. 10). For the reasons set forth below, the Court GRANTS IN PART both Motions to Dismiss, and the Complaint is hereby DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

The instant lawsuit arises out of a 2013 dispute over what Andrade refers to as "the illegal attempt to remove duly elected officers" from Kahikolu Church.[1] Compl. ¶¶ 30, 23–24. Specifically, Charmayne Pule, Dolly Andrade (Plaintiff Andrade's sister), and Donna "Maka" Falemalu (collectively, "Principal Officers") had been elected as "Moderator," "Vice-Moderator," and "Secretary" during an Annual General Membership Meeting at Kahikolu Church on or about March 24, 2013. Compl. ¶ 31. At a General Membership Meeting on April 21, 2013, attendees purportedly elected Bobby L. Macomber as the new "Pastor/Kahu" of Kahikolu Church. Compl. ¶ 35. Andrade disputes the validity of Macomber's election and subsequent actions as the purported Kahu.[2] Compl. ¶¶ 35–41, 44, 49.

---

[1] Andrade is a "lifelong member" of Kahikolu Congregational Church in Kona, Hawaiʻi, as were "[s]everal generations of [her] family"; "[m]ore than fifty of [Andrade's] ancestors are buried in the Kahikolu cemetery, including her mother, father, and grandparents." Compl. ¶¶ 27–28.

[2] For instance, Andrade represents that Macomber "has never been 'installed' or 'licensed' [by the Hawaii Conference United Church of Christ, Hawaiʻi Island Association] at Kahikolu as the Kahu or Pastor." Compl. ¶¶ 35–43.

Andrade alleges that following the April 21, 2013 General Membership Meeting, she "heard from several sources about what had been described to her as intimidation and bullying by Mr. Macomber," including "physical confrontations" with "a number of [Macomber's] followers." Compl. ¶ 67. Andrade further complains that "Mr. Macomber and his followers" have "caused the participation and active involvement of, and intimidation by the Kona Police, led by [County Defendant] Officer Cho." Compl. ¶ 66. The Complaint alleges that "Officer Cho is related to [Kahikolu Church member] Donovan Cho, and is a close friend of [Private Defendants] Darryl and Leona Grace, both of whom are Mr. Macomber's followers." Compl. ¶ 70.

Andrade alleges that her only personal involvement with defendants in this case occurred in November 2013 when she, together with the entire congregation, was invited to attend a meeting at Kahikolu Church. Compl. ¶ 68. She traveled from her Honolulu residence to Kona to attend the November 15, 2013 meeting, only to find that the locks to the church gates had been changed. Compl. ¶¶ 76–77. Meeting attendees nonetheless gained entry onto church grounds by climbing a rock wall surrounding the property:

> [After discovering that] the entrance gate of the Church grounds was locked [and] [b]ecause there were no "Walking Paths" through the Rock Wall for access to Kahikolu Church, the parties, including the elderly kapuna, were forced to climb over the Hawaiian rock wall. Once inside Kahikolu grounds, they found that the Sanctuary and all

other buildings had also been locked; so they held the Meeting in Kahikolu's pavilion.

Compl. ¶ 77.

After the meeting, uniformed police officers, including Officer Cho, allegedly "interrogated" Dr. Andrade and others regarding their presence on church grounds. Compl. ¶¶ 78–81. According to Andrade, Private Defendant Darryl Grace, "with the cooperation of Mr. Macomber and/or his followers," was the person who allegedly alerted the police and asked them to investigate.[3] Compl. ¶ 78. Andrade was later charged with criminal trespassing under Hawaii Revised Statutes ("HRS") Section 708-815(1) in connection with this incident.[4] Compl. ¶ 82.

Andrade alleges that while being interrogated by Officer Cho on November 15, 2013, she "specifically informed [him] that she and other members had been invited by the Principal Officers to come [to] the Church for a duly called

---

[3]The Complaint also asserts that "the Police made arrangements to have members of the SWAT team from Kamuela staged nearby for possible intervention in the Kahikolu Church meeting." Compl. ¶ 79. Andrade takes issue with Officer Cho's presence at the church on November 15, 2013, in part because he allegedly told Andrade's sister that he did not plan to be present for the meeting on two separate occasions. Compl. ¶¶ 69, 72.

[4]Later that same weekend, Private Defendants allegedly interfered with a "General Membership Meeting" that was scheduled to take place after religious services on Sunday, November 17, 2013. Compl. ¶¶ 85, 93–94. Andrade alleges that the interference caused approximately 20 minutes of delay in the meeting. Compl. ¶¶ 91, 93–94. According to the Complaint, attendees were again interrogated by Officer Cho and other uniformed police officers upon leaving the November 17 meeting (Compl. ¶ 94), although it is unclear whether Officer Cho included any information gathered on this date in his incident report discussing the November 15 events.

4

Meeting." She further alleges that Officer Cho already knew about the meeting, having met a day earlier with Dolly Andrade and been provided with documentation evidencing their legal presence on church grounds.[5] Compl. ¶¶ 73, 80.

According to the Complaint, Officer Cho "referred his [trespassing] investigation to the prosecutor's office." In the "formal incident report" regarding the November 15, 2013 incident, Officer Cho "made no reference":

> (i) to his November 14, 2013 meeting with the Vice Moderator at the Kailua Police Station, or (ii) Officer Cho's specific knowledge of the duly called Church Meeting, or (iii) the fact he had seen and made copies on November 14, 2013 of critical documents regarding the identity and authority of the Principal Officers, or (iv) the fact he attempted to convince Dolly to cancel the Friday night Meeting.

Compl. ¶ 81. This incomplete report,[6] Andrade asserts, resulted in her being charged with criminal trespass on June 10, 2014. *See* Ex. B, Compl.; ECF No. 10-4); Compl. ¶ 82.

---

[5]Andrade contends that Officer Cho met with Dolly on November 14, 2013 under the pretext of discussing the upcoming trial in her assault-and-battery case against one of Macomber's followers. Compl. ¶ 69. The true purpose of the meeting, however, was allegedly "so [Officer Cho] could intimidate Dolly to cancel the [November 15, 2013] Meeting." Compl. ¶¶ 71, 74. Cho's intimidation allegedly included warning Dolly about trespass, which caused Dolly to provide Cho with: "(i) a copy of the Kahikolu By-Laws and the provisions about the [P]rincipal Officers . . . [;] (ii) a copy of the March 24, 2013 Meeting Minutes, at which the Principal Officers were elected[;] and (iii) the DCCA form showing that Pule was the Moderator and Dolly was the Vice Moderator." Compl. ¶ 73.

[6]The parties have not provided the Court with the Incident Report itself.

On January 5, 2015, the Circuit Court of the Third Circuit, State of Hawaii,

granted Andrade's unopposed Motion to Dismiss the criminal trespass charges for

violation of Andrade's right to a speedy trial. *See* Cty. Defs.' Reply, Ex. A, Mot.

to Dismiss With Prejudice, ECF No. 27-2; Ex. B, No Opp'n to Defs.' Mot. to

Dismiss, ECF No. 27-3; Ex. C, Notice of Entry and Judgment and/or Order, ECF

No. 27-4.

### *Procedural Background*

On December 30, 2016, Andrade filed a Complaint (ECF No. 1) alleging

violations of 42 U.S.C. Section 1983 by both the County Defendants (Compl.

¶¶ 97–103) and the Private Defendants (Compl. ¶¶ 104–07).[7]

As grounds her claims, Andrade alleges that Officer Cho violated her rights

under the First Amendment by preventing her from attending a meeting that was to

take place at the church; that he violated her Fourth Amendment rights by

allegedly omitting information from the incident report that he referred for

prosecution; and that he violated Andrade's Fourteenth Amendment equal

protection rights by way of these alleged violations, which also constitutes

"malicious prosecution." *See* Compl. ¶¶ 98–103. The Complaint also states that

---

[7]Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

each of the Private Defendants "willfully participat[ed] in joint action with state officials" to deprive Andrade of these constitutional rights, thereby also violating Section 1983. Compl. ¶¶ 105–06. Andrade claims that these violations of her "clearly established constitutional rights" resulted in "severe and substantial damages . . . , includ[ing] litigation expenses [such as] attorneys' fees, humiliation, embarrassment, inconvenience, emotional distress, and other compensatory damages . . . ." Compl. ¶¶ 107–08.

On February 15, 2017, the Private Defendants moved to dismiss (ECF No. 8), arguing that Andrade's Section 1983 claim "is time-barred under Hawaii's two-year personal injury statute of limitation," HRS § 657-7, that the Court lacks subject matter jurisdiction, that Plaintiff lacks standing, and that the Complaint is precluded by the Pullman Abstention Doctrine because "[t]he present matter arises from the same transactions and occurrences that are currently being litigated in state court." Mem. in Supp. of [Private Defs.'] Mot. to Dismiss 7–9, ECF No. 8-1. The County Defendants moved to dismiss on February 16, 2017 (ECF No. 10), similarly alleging untimeliness based on HRS § 657-7. Mem. in Supp. of [Cty. Defs.'] Mot. to Dismiss 6, ECF No. 10-1. Additionally, the County Defendants assert that Officer Cho is entitled to qualified immunity, that the Complaint does not establish causation between Officer Cho's actions and Andrade's alleged harm, and that the Complaint fails to state a claim of municipal liability against the

County consistent with the requirements of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1977). Cty. Defs.' Mem. in Supp. 6, 11, 13–14.

Andrade opposed both motions on March 10, 2017. Opp'n to Private Defs., ECF No. 24; Opp'n to Cty. Defs., ECF No. 25. Defendants filed their reply briefs on March 17, 2017. Private Defs.' Reply, ECF No. 26; Cty. Defs.' Reply, ECF No. 27. The parties appeared before this Court for a hearing on April 12, 2017 (Tr. of Proceedings, ECF No. 33), after which the Court took matters under advisement.

Between the Court's April 12, 2017 hearing and the date of this Order, the County Defendants removed a separate, state court action brought by the Principal Officers that arises out of the same events described in Andrade's Complaint. *See* Notice of Removal, *Pule v. Macomber*, 1:17-cv-00193-DKW-KJM (filed Apr. 27, 2017), ECF No. 1. That action is also pending before this Court.

## STANDARD OF REVIEW

### *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(6) challenges a complaint's compliance with the pleading requirements provided by the Federal Rules.

The Court may dismiss a complaint pursuant to FRCP 12(b)(6) for "failure to state a claim upon which relief can be granted" when there is a "lack of a

cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, plaintiffs are required to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by FRCP Rule 8(a)(2).  *Id.* at 677, 679 (explaining that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine*

*Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also Iqbal*, 556 U.S. at 678 (explaining that the tenet "is inapplicable to legal conclusions").

*Leave to Amend*

Under Rule 15(a) of the FRCP, leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires." FRCP Rule 15(a)(2); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (explaining that "the underlying purpose of [FRCP] Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities") (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). Nonetheless, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir. 1984) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962); *Erlich v. Glasner*, 352 F.2d 119, 122 (9th Cir. 1965)).

<u>**DISCUSSION**</u>

Andrade's Section 1983 claims against Officer Cho and the Private Defendants are untimely. Andrade also fails to state a claim for municipal liability against the County of Hawaiʻi under *Monell*. As such, the Motions to Dismiss are GRANTED. However, because facts may exist that would allow the claims to proceed, the Court dismisses the action without prejudice and grants Andrade leave to amend.

I. **ANDRADE'S SECTION 1983 CLAIMS ARE TIME-BARRED**.

    A.    HAWAII'S TWO-YEAR STATUTE OF LIMITATIONS FOR PERSONAL INJURY ACTIONS GOVERNS.

Andrade's Complaint alleges separate Section 1983 claims against the County Defendants (Compl. ¶¶ 97–103) and the Private Defendants (Compl. ¶¶ 104–08). Section 1983 does not contain a statute of limitations; rather, it borrows the appropriate limitations period applicable under the law of the state in which the alleged constitutional injury took place. *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007)), *cert. denied*, 137 S. Ct. 109, *reh'g denied*, 137 S. Ct. 489 (2016); *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) ("[I]n this § 1983 suit, the district court appropriately borrowed Oregon's residual two-year statute of limitations for personal injury actions."). Where there is more than one possible statute of limitations under state law, federal courts apply the limitations period

applicable to personal injury actions in the forum state. *Owens v. Okure*, 488 U.S. 235, 240–41 (1989) (citing *Wilson v. Garcia*, 471 U.S. 261, 272 (1985)); *Canatella v. Van de Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007); *cf. Wilson*, 471 U.S. at 279 ("The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983."). As a result, Andrade's Section 1983 claims are subject to the two-year statute of limitations applicable to personal injuries set forth in HRS § 657–7. *See Pele Def. Fund v. Party*, 73 Haw. 578, 597–98, 837 P.2d 1247, 1260 (1992) ("The statute of limitation applicable to § 1983 actions in Hawaii is the two-year 'general personal injury' provision."); *accord Shaughnessy v. Hawaii*, 2010 WL 2573355, at *9 (D. Haw. June 24, 2010); *Rodenhurst v. Hawaii*, 2009 WL 2365433, at *4 n.4 (D. Haw. July 30, 2009).

"Although state law determines the length of the limitations period, 'the determination of the point at which the limitations period begins to run is governed solely by federal law.' " *McCoy v. San Francisco*, 14 F.3d 28, 29 (9th Cir. 1994) (quoting *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 318–19 (9th Cir. 1991), *cert. denied*, 504 U.S. 910 (1992)); *Wallace* 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."). Under federal law, the statute of limitations begins to run on a Section 1983 claim "when plaintiff knows or has reason to know of [the]

injury which is the basis of [her] action." *Stanley v. Trustees of Cal. State. Univ*.,
433 F.3d 1129, 1136 (9th Cir. 2006) (quoting *Hoesterey*, 945 F.2d at 319).  Thus,
to survive the timeliness inquiry under the two-year statute of limitations,
Andrade's claims must have accrued—*i.e*., Andrade must have either known of her
alleged constitutional injury or had sufficient facts such that a reasonable inquiry
would have revealed the basis of her Section 1983 claims—not more than two
years prior to the December 30, 2016 filing of the Complaint.

> B.    OFFICER CHO'S ALLEGED MISCONDUCT OCCURRED MORE
>        THAN TWO YEARS BEFORE ANDRADE FILED SUIT.

Officer Cho is the only named County of Hawaiʻi employee who is alleged
to have violated Andrade's constitutional rights.  According to the Complaint,
Andrade "suffered severe and substantial damages" as a result of Officer Cho:

(a)    intimidating and trying to prevent Dr. Andrade, Church
Officers, and Congregation members from attending a
[November 15, 2013] meeting at Kahikolu,

(b)    using his status as a law enforcement officer to harass and
intimidate Dr. Andrade and Church Officers and Congregation
Members,

(c)    writing a misleading Incident Report that omitted material
information showing Dr. Andrade's innocence, and

(d)    referring his incomplete and misleading Incident Report to the
prosecutor's office, resulting in Dr. Andrade being falsely
charged with Criminal Trespass.

Compl. ¶ 99 (formatting altered).  None of the facts in the Complaint, however, identify conduct by Officer Cho that occurred during the limitations period. Accordingly, claims based on these allegations are barred.

The Complaint alleges that Officer Cho attempted to prevent Andrade and others from attending a November 15, 2013 meeting at the church in violation of the First Amendment.  Compl. ¶ 95; *see generally Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984) (explaining that freedom of expressive association "recognize[s] a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion").  Officer Cho's efforts at dissuasion allegedly occurred the day before—on November 14, 2013—in a meeting between Officer Cho and Andrade's sister, Dolly.  Compl. ¶¶ 69–74.  Indeed, given the date of the meeting itself, any effort to prevent it would necessarily have had to occur prior to November 15, 2013.  As a result, Andrade's First Amendment-based Section 1983 claim accrued more than two years prior to December 30, 2016 and is time barred.[8]

Andrade's Section 1983 claim based on "harassment and intimidation" meets the same fate.  The Complaint identifies two occasions when Officer Cho

_____

[8]The merit of this First Amendment-based claim also appears dubious, given that Officer Cho's alleged prevention efforts were directed at persons other than Andrade, and given that the meeting for which Andrade assembled apparently took place as scheduled on church grounds.

allegedly harassed Andrade, both of which occurred in November 2013. On November 15, 2013, Andrade alleges that uniformed police officers, including Officer Cho, "interrogated" her regarding her presence at Kahikolu, presumably including her decision to participate in scaling the exterior church wall to gain access to the premises. Compl. ¶ 80. Two days later, on November 17, 2013, Andrade alleges that uniformed officers, including Officer Cho, "further intimidated Dr. Andrade and the Congregation" (Compl. ¶ 94) and used their authority as law enforcement officers to "deprive Dr. Andrade of her Constitutional right to free association" (Compl. ¶ 95). There are no facts alleged regarding any other intimidating or harassing behavior towards Andrade by Officer Cho—and, in particular, there are no allegations of harassment that occurred within the two years before Andrade's December 30, 2016 complaint. Accordingly, Andrade's harassment-and-intimidation-based Section 1983 claim is untimely.[9]

Andrade also bases her Section 1983 claim on Officer Cho "writing a misleading Incident Report that omitted material information showing Dr. Andrade's innocence" to the criminal trespassing charge that was filed more than

---

[9]Many of the Complaint's references to harassment and intimidation concern Officer Cho's alleged conduct towards others, including Dolly Andrade and "various Long Term Congregation Members." *See* Compl. ¶¶ 66, 67, 71, 72, 74 & 78. Plaintiff lacks standing to assert the rights of others. *See generally Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) ("We have adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

six months later.  Compl. ¶ 99(c).  Andrade states that "Officer Cho's deliberate failure to include evidence in his report that completely exonerated Dr. Andrade was a substantial factor in Dr. Andrade being criminally charged."  Opp'n to Cty. Defs. 11 (citing Compl. ¶¶ 17, 72).  While the date of Officer Cho's incident report is not alleged, it is evident that the report was completed sometime between November 15, 2013, the date of Andrade's alleged trespass, and June 10, 2014, the date of the criminal trespass complaint filed against Andrade.  The precise date does not matter because even if Officer Cho acted on the latest date within this eight-month period, it would still be well outside the two-year statutory limitations period.  And Officer Cho is not alleged to have done anything beyond June 10, 2014.[10]

Finally, Andrade asserts that Officer Cho's decision to "forward a knowingly false and misleading report to the prosecutor's office, resulting in unsubstantiated criminal charges, was a violation of the Fourth and Fourteenth Amendments' protections against Dr. Andrade's rights to be free from unwarranted criminal prosecution and equal protection of the laws."  Opp'n to Cty. Defs. 13.

---

[10]The Court additionally notes that the merit of Andrade's contention—that law enforcement officers are constitutionally obliged to include all material information communicated to them in any related police report—is suspect.  *See, e.g.*, *Safar v. Tingle*, 178 F. Supp. 3d 338 (E.D. Va. 2016) (finding officer not liable where, after issuance of an arrest warrant, officer learns that the charges were erroneous but fails to take any further action).  Andrade has offered no such authority, and the Court is aware of none.  At minimum, in the absence of clear authority within this Circuit establishing Andrade's premise, qualified immunity would appear to apply.

Assuming this assertion actually constitutes a valid Section 1983 claim, it is once again based on alleged conduct by Officer Cho that predates the two-year window leading up to Andrade's December 30, 2016 complaint.[11]  And once again, that renders the Section 1983 claim as untimely.

In sum, all of Officer Cho's allegedly improper acts described in the Complaint—the last of which occurred no later than June 10, 2014 date—occurred more than two years before Andrade filed her December 30, 2016 complaint.  The only conduct inside the limitations period that Andrade *does* identify in the Complaint is the dismissal of the trespass charges against Andrade on January 5, 2015.  *See* Compl. ¶ 82.  But neither the bringing, nor the dismissal, of the trespassing charges can be fairly attributed to Officer Cho under the facts alleged. *See Ambrose v. Coffey*, 696 F. Supp. 2d 1119, 1133 (E.D. Cal. 2010).[12] Accordingly, the allegations in the Complaint against Officer Cho are untimely.

---

[11]The Court only assumes the validity for purposes of this motion because, among other things, Andrade: (i) does not allege a search, seizure or any other deprivation of liberty necessary to support a Fourth Amendment violation, (ii) does not allege membership in a suspect class or disparate treatment necessary to support a Fourteenth Amendment equal protection violation; and (iii) cannot assert that the dismissal of the criminal charges was the product of a decision on the merits, necessary to a malicious prosecution claim, in the face of the speedy trial violations cited by the state court.

[12]*See* Rest. (2d) of Torts § 655, cmt. c ("The fact that [the officer] initiated the proceedings does not make him liable for continuation of the prosecution merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused, even though they have the effect of convincing [the officer] that this is a fact.").

## C. ANY ALLEGED WRONGDOING ON THE PART OF THE PRIVATE DEFENDANTS NECESSARILY PREDATES THE ALLEGATIONS AGAINST OFFICER CHO.

Andrade's theory of liability against the Private Defendants is that they were complicit in constitutional violation(s) committed by the County Defendants. Specifically, the Complaint alleges that each of the Private Defendants "willfully participat[ed] in joint action with state officials" to deprive Andrade of her rights protected by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, thereby violating 42 U.S.C. Section 1983 by "trying to prevent Dr. Andrade, the Principal Officers and Congregation Members from attending a duly called Meeting at Kahikolu, [and] using Officer Cho's status as a law enforcement officer to harass and intimidate Dr. Andrade, resulting in Dr. Andrade being falsely charged with Criminal Trespass."  Compl. ¶¶ 105–06.  Even assuming, *arguendo*, that the Private Defendants' conduct constituted "joint action" within the meaning of Section 1983,[13] their alleged misconduct necessarily predates that of Officer Cho.  That is because Andrade alleges that Officer Cho became involved in the aforementioned events at the behest of the Private Defendants.  *See, e.g.*, Compl. ¶ 78.  As with Officer Cho, then, Andrade also has not alleged that the Private Defendants' alleged conduct occurred in the two years leading up to the date of

---

[13] *See generally Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (citations omitted) (explaining that the ultimate issue in determining whether a private individual is subject to suit under Section 1983 is whether the alleged infringement of federal rights is fairly attributable to the government).

filing of her December 30, 2016 complaint.  Accordingly, Andrade's Complaint is untimely with respect to the Private Defendants.

Andrade's attempt to invoke the rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994)—to argue that the statute of limitations did not begin to run on her claims until her trespass charges were dismissed with prejudice in state court on January 5, 2015—is misguided.  *Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn."  *Wallace*, 549 U.S. at 393.  There, petitioner's Section 1983 claim alleged that two prosecutors and a police investigator "had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial."  *Heck*, 512 U.S. at 478–79.

In ruling against the petitioner, the *Heck* Court held that in order for a Section 1983 plaintiff to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of

habeas corpus. 512 U.S. at 486–87 (footnote omitted) (citing 28 U.S.C. § 2254). None of these predicates is present here. In fact, Andrade was never convicted of, nor sentenced for, criminal trespass. Compl. ¶ 84; *see* Cty. Defs.' Reply, Exs. A–C (demonstrating that the charges were dismissed with prejudice on January 5, 2015 for a violation of Andrade's constitutional right to a speedy trial).

As Andrade notes, the Ninth Circuit did, at one time, suggest that *Heck* might apply to even pending criminal proceedings. *See Harvey v. Waldron*, 210 F.3d 1008, 1014–16 (9th Cir. 2000). However "this application of *Heck* has been explicitly overruled by the Supreme Court." *Rivas v. Cal. Franchise Tax Bd.*, 619 F. Supp. 2d 994, 1000 (E.D. Cal. 2008) (citing *Wallace*, 549 U.S. at 393 (explaining that the *Heck* rule only comes into play when there exists an "outstanding criminal judgment" that the civil cause of action "would impugn")); *see Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) (recognizing that the *Heck* rule is not implicated merely by the pendency of charges (citing *Wallace*, 549 U.S. at 392–94)). As such, *Heck* does not apply and cannot serve as the basis for the deferral of accrual urged by Andrade.

The Court dismisses Andrade's Section 1983 claims on statute of limitations grounds.

II.  **ANDRADE HAS NOT SUFFICIENTLY PLED A CLAIM FOR MUNICIPAL LIABILITY AGAINST THE COUNTY OF HAWAIʻI.**

A plaintiff may establish municipal liability under Section 1983, as recognized in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1977), by showing at least one of the following:

> (1) conduct pursuant to an official policy inflicted the injury; (2) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (4) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).  Here, Andrade alleges that the County of Hawaiʻi is liable for constitutional violations under the fourth theory of *Monell* liability because it:

> [r]atified Officer Cho's violation of Dr. Andrade's Constitutional rights, by among other things approving Officer Cho's Incident Report that failed to contain facts critical to Dr. Andrade's right to participate, as a Church Member, in a meeting at Kahikolu [Church], to which she was invited by the Principal Officers, and approving referring a purported Criminal Trespass [incident report by Officer Cho] to the prosecutor's office, resulting in false and unsubstantiated charges being alleged against Dr. Andrade.

Compl. ¶ 100.

To sufficiently plead ratification for purposes of *Monell*, Andrade "must show the decision was the product of a conscious, affirmative choice to ratify the

[unconstitutional] conduct in question." *Edenfield v. Estate of Willets*, 2006 WL 1041724, at *16 (D. Haw. Apr. 14, 2006) (explaining further that "[s]uch a ratification 'could be tantamount to the announcement or confirmation of a policy for purposes of *Monell*'") (quoting *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003), *rev'd on other grounds*, 543 U.S. 194 (2004) (per curiam)). In other words, ratification requires both proof of a policymaker's knowledge of the alleged constitutional violation, *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999), and proof that the policymaker deliberately chose to "endorse" the individual officer's conduct and the basis for it, *see Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

Andrade's allegations, however, do not come close. For instance, she does not allege who the ratifying official was, what that official knew about Officer Cho's conduct, what that official did that constitutes ratification, nor when that official acted. These are the facts to which the defense, at a minimum, would be entitled to allow for further inquiry and investigation. *See Wallace*, 549 U.S. at 393. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action" does not comply with federal pleading standards, "[n]or does a complaint suffice if it tenders 'naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (or 1949) (quoting *Twombly*, 550

U.S. at 555, 557).  Accordingly, the Complaint fails to state a claim of ratification

liability against the County of Hawaii under *Monell*.[14]

## III.   **LIMITED LEAVE TO AMEND IS APPROPRIATE**.

"[A] complaint cannot be dismissed unless it appears beyond doubt that the

plaintiff can prove no set of facts that would establish the timeliness of the claim."

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th

Cir. 2009) (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206–07 (9th Cir.

1995) ("[A]n appellate court] must reverse if the factual and legal issues are not

sufficiently clear to permit us to determine with certainty whether the doctrine

could be successfully invoked.")), *as amended* (Jan. 14, 2010).  Pursuant to the

above discussion, the Court dismisses Andrade's Complaint *without* prejudice and

grants Andrade leave to amend to attempt to cure the deficiencies identified in this

Order.

---

[14]The Private Defendants additionally assert that "Pullman" abstention warrants dismissal of Andrade's claims.  Private Defs.' Mem. in Supp. 9; Private Defs.' Reply 5–6.  *See generally R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941) (plurality decision).  "The *Pullman* abstention doctrine is a narrow exception to the district court's duty to decide cases properly before it which allows postponements of the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"  *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)).  Here, Private Defendants argue that constitutional questions raised in this case and the related *Pule v. Macomber* case, 1:17-cv-00193-DKW-KJM (filed Apr. 10, 2017), "could be mooted or narrowed by a definitive ruling [by the state court] on the state law issue of whether or not the Movants were the rightful church leaders who had a right to choose who could and could not be on church property at a particular time."  Private Defs.' Reply 6.  Since this argument was presented, however, the *Pule* case was removed to this Court, which is not aware of any related proceeding pending in state court.  Accordingly, the *Pullman* doctrine does not apply.

If Andrade chooses to file an amended complaint, she must identify in short, plain statements: (1) the specific basis of this Court's jurisdiction; (2) the constitutional or statutory right Andrade believes was violated—including by separately identifying each theory of liability under Section 1983 on which her claims rely; (3) the name of the defendant who violated that right; (4) exactly when and what that defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Andrade's rights; and (6) what specific injury Andrade suffered because of the defendants' conduct. Andrade must repeat this process for each person or entity that she names as a defendant. *See Nichols v. Logan*, 355 F. Supp. 2d 1155, 1165 (S.D. Cal. 2004). If Andrade fails to affirmatively link the conduct of each named defendant with the specific injury she suffered, the allegation against that defendant will be dismissed for failure to state a claim.

The amended complaint must also designate that it is the "First Amended Complaint" and may not incorporate any part of the original Complaint; rather, any specific allegations must be re-written in their entirety. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in unrelated part by Lacey v. Maricopa Cty.*, 693 F.3d 896, 927–28 (9th Cir. 2012) (en banc). Claims dismissed without prejudice that are not re-alleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928. Andrade may include only one

claim per count. Failure to file an amended complaint consistent with the guidance provided by this Order will result in the automatic dismissal of this action with prejudice.

## CONCLUSION

The Court hereby DISMISSES without prejudice the claims in the original Complaint and GRANTS Andrade leave to file a First Amended Complaint by no later than August 11, 2017.

IT IS SO ORDERED.

DATED: July 12, 2017 at Honolulu, Hawaiʻi.

_____
Derrick K. Watson
United States District Judge

-----------------------------------------------------------------------------------------------------