IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| NALEEN N. ANDRADE, M.D.,<br><br>        Plaintiff,<br><br>    v.<br><br>DARREN CHO, COUNTY OF HAWAIʻI, BOBBY L. MACOMBER, THELMA MACOMBER, DARRYL GRACE SR., LEONA GRACE, TRAVIS LEINONAN, *et al.*,<br><br>        Defendants. | Case No. 16-cv-00684-DKW-KJM<br><br>**ORDER (1) GRANTING DEFENDANTS DARREN CHO AND COUNTY OF HAWAIʻI'S MOTION TO DISMISS, (2) GRANTING DEFENDANTS BOBBY L. MACOMBER, THELMA MACOMBER, DARRYL GRACE SR., LEONA GRACE, AND TRAVIS LEINONAN'S SUBSTANTIVE JOINDER, AND (3) DISMISSING THIS CASE WITH PREJUDICE** |

On May 7, 2021, the stay of this case was lifted by the Court.   At the time the stay was initiated in January 2018, a motion to dismiss by Defendants Darren Cho (Cho) and the County of Hawaiʻi (County, and with Cho, the "County Defendants") had been granted by the Court, but without a written order setting forth the Court's reasoning.   With the stay having been lifted, the Court now provides its reasoning below.

In their motion to dismiss, the County Defendants argue that the claims against them in the First Amended Complaint ("FAC")−Counts 1 and 3−should be dismissed on various grounds, including the statute of limitations, qualified

immunity, and failure to state a claim.   While the Court agrees with Plaintiff Dr.

Naleen Andrade that her Section 1983-based claim of malicious prosecution is not

time-barred, the Court agrees with the County Defendants that Cho has not violated

the constitution with respect to that claim.   The Court also agrees that the FAC does

not state a claim of liability against the County itself.   Further, because Plaintiff has

failed to allege a constitutional violation, the Court also DISMISSES Count Two

against the remaining defendants (referred to herein, as the "Private Defendants,"

and, with the County Defendants, "Defendants"), following their substantive joinder

in the motion to dismiss, and Count Three against all Defendants.   Finally, because

Plaintiff has already been provided an opportunity to amend her allegations, the

Court denies leave to amend them again.

## FACTUAL BACKGROUND

The FAC makes the following pertinent factual allegations.   As in the first

iteration of the Complaint, this case arises out of a dispute over the governance of

Kahikolu Church ("Church") on the Big Island of Hawaiʻi.   Succinctly, the alleged

governance dispute pits three "officers" of the Church ("Church Officers"),

including Andrade's sister, Dolly Andrade, against a group of individuals led by

Defendant Bobby L. Macomber, who was allegedly elected as the new Pastor (or

Kahu) of the Church in April 2013.   The Church Officers dispute the validity of

Macomber's election.   FAC at ¶¶ 36-42, Dkt. No. 49.   In October 2013, in one

2

alleged conflict between the sides, one of Macomber's "followers" assaulted Dolly Andrade by hitting her with a fist.   *Id*. at ¶¶ 61, 63.

Plaintiff, Dr. Naleen Andrade (Plaintiff or Andrade), is a member of the Church.   *Id.* at ¶ 27.   Her interaction with the governance dispute took place in November 2013.   At that time, the Church Officers invited her and the entire congregation to attend a meeting at the Church on November 15, 2013.   *Id*. at ¶ 67.

The day before the November 15, 2013 meeting, Dolly Andrade was asked to drive to the Kailua-Kona Police Station to speak with Defendant Cho about the October 2013 assault.   *Id*. at ¶ 68.   Cho is allegedly related to Donovan Cho and a "close friend of Defendants Darryl and Leona Grace, "both of whom are Defendant Macomber's followers."   *Id*. at ¶ 69.   Before meeting with Cho, Dolly Andrade met with the Chief of the Kona Police Department ("Police Chief").   *Id*. at ¶ 70. The Police Chief indicated that he was aware of the planned November 15, 2013 meeting and that he "wanted to discuss that meeting."   *Id*.   When Dolly Andrade met Cho under the ruse of speaking about the October 2013 assault, Cho instead questioned her about the November 15, 2013 meeting.   *Id*. at ¶ 71.   Cho initially tried to get the meeting cancelled or moved from the Church.   *Id*.   Cho "indicated that he believed that none of the [Church] Officers had any right to enter [Church] property, and that any entry onto [Church] property would be a trespass."   *Id*. at ¶ 72.   In response, Dolly Andrade showed Cho: (1) a copy of the Church's by-laws,

3

explaining that the Church Officers were officers of the Church; (2) a copy of records confirming the Church Officers were officers of the Church; and (3) a copy of the minutes of a March 24, 2013 Annual General Meeting, at which the Church Officers had been elected officers of the Church.  *Id.* at ¶ 74.  Plaintiff describes the foregoing documents as "Evidence of Authority."  *Id.*  Cho "indicated surprise" and copied the Evidence of Authority.  *Id.* at ¶ 75.

On November 14, 2013, "[u]nknown" to Plaintiff, Macomber ordered his followers to change the locks at the Church, lock the Church gate, lock ancillary buildings on the grounds, and lock the Church itself.  *Id.* at ¶ 84.  As a result, when Plaintiff, the Church Officers, and other members of the congregation arrived at the Church on November 15, 2013 for their meeting, they found the gate to the Church locked and their keys unable to open the lock.  *Id.* at ¶ 85.  This caused Plaintiff, the Church Officers, and other Church members to "climb over the rock wall."  *Id.*

At some point in the evening of November 15, 2013, Defendant Darryl Grace reported to Cho that "someone had entered into the [Church] grounds without permission[.]"  *Id.* at ¶ 79 (quotation omitted).  Cho and other police officers then went to the Church, "disrupted" the meeting, and "interrogated" various members of the congregation about a purported trespass on Church property.  *Id.*  Cho and/or the Police Chief also arranged for a SWAT team to be in the area.  *Id.* at ¶ 80.  Plaintiff was "intimidated" by the presence of the SWAT team, armed police

officers, and being interrogated.   *Id*. at ¶ 81.   This also made her "fearful" of using the Church.   *Id*. at ¶ 88.

Subsequently, Cho prepared a police report ("Police Report") regarding his investigation of the November 15, 2013 meeting that was submitted to a prosecutor. *Id*. at ¶ 82.   The Police Report failed to mention the Evidence of Authority and the presence of the SWAT team.   *Id*. at ¶ 83.[1]   On January 5, 2015, the Third Circuit Court for the State of Hawaiʻi granted a motion to dismiss the criminal trespass charge against Andrade with prejudice for violation of her right to a speedy trial. *Id*. at ¶ 127; 7/12/17 Order at 6, Dkt. No. 41.

## PROCEDURAL BACKGROUND

This case began with the filing of a Complaint on December 30, 2016.   Dkt. No. 1.   Therein, Plaintiff asserted a single count under 42 U.S.C. Section 1983 against the County Defendants and a single count against the Private Defendants, also under Section 1983, claiming that her First, Fourth, and Fourteenth Amendment rights had been violated.

On July 12, 2017, this Court granted in part and denied in part the County Defendants and Private Defendants' respective motions to dismiss.   Dkt. No. 41. More specifically, the Court found that Plaintiff's Section 1983 claims were time-barred because they had been brought more than two years after the events

---

[1]Although it is not alleged in the FAC, in the original Complaint, Plaintiff alleged that she was charged with criminal trespass on June 10, 2014.   *See* Dkt. No. 1 at ¶ 82.

alleged in the Complaint.[2]   The Court similarly found the claims against the Private

Defendants to be untimely because the events underlying them "necessarily

predate[d]" the alleged conduct of the County Defendants.   *Id*. at 18.   The Court

also found that Plaintiff failed to allege a claim against the County for municipal

liability because her allegations did not "come close" to showing that the County

ratified unconstitutional conduct.   *Id*. at 22.   However, because it did not appear

beyond doubt that amendment could not cure the deficiencies with the Complaint,

the Court granted leave to amend.

Rather than filing an amended complaint, Plaintiff instead moved to

reconsider the July 12, 2017 Order.   Dkt. No. 42.   On August 29, 2017, the Court

denied the motion for reconsideration.   Dkt. No. 47.   Among other things, the

Court explained that, to the extent Plaintiff alleged Cho engaged in malicious

prosecution, any such claim was deficient because the alleged facts showed that Cho

reasonably believed there was probable cause to refer the Police Report to

prosecutors.   The Court further found that, because Plaintiff had failed to allege a

constitutional violation on the theory of malicious prosecution against Cho, she

could not pursue any such theory against the County.   The Court, however,

extended the time for Plaintiff to file an amended complaint.

---

[2]In that regard, the Court found that a two-year statute of limitations applied to Plaintiff's Section 1983 claims.   Dkt. No. 41 at 11-12.

On September 11, 2017, Plaintiff filed the FAC−the operative complaint at this stage of the proceedings.   Dkt. No. 49.   Therein, in Counts One and Two, respectively, Plaintiff asserts claims under Section 1983 against the County Defendants and the Private Defendants.   Plaintiff also adds a new count, Count Three, against all Defendants under 42 U.S.C. Section 1985(3).

On September 25, 2017, the County Defendants filed a motion to dismiss all claims asserted against them in the FAC ("motion to dismiss"), pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").   Dkt. No. 52.   Soon thereafter, the Private Defendants filed a "[s]ubstantive [j]oinder" to the motion to dismiss, seeking "the same relief sought therein."   Dkt. No. 54.   On November 9, 2017, Plaintiff filed an opposition to the motion to dismiss.   Dkt. No. 59.   The County Defendants then filed a reply in support of their motion.   Dkt. No. 61.

On November 29, 2017, this Court issued an Entering Order granting the motion to dismiss and dismissing Counts One and Three of the FAC.   Dkt. No. 62. The Court stated that a written order setting forth the Court's reasoning would follow.   Before a written order could follow, however, a stay was imposed on this case, and the parties were directed to schedule a mandatory settlement conference. Dkt. No. 66.   The parties' settlement discussions, taking place over the course of roughly three years, have not resulted in a settlement to this point.   Dkt. Nos. 74, 77, 79.   As a result, the stay was lifted on May 7, 2021.   Dkt. No. 80.

This Order, addressing the motion to dismiss, now follows.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."   Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires."   Fed.R.Civ.P. 15(a)(2).   Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.   *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

### I.   Motion to Dismiss

#### 1.   Count One

The County Defendants argue that Count One should be dismissed for numerous reasons.   They argue that the claim is untimely, Cho is entitled to qualified immunity, and Plaintiff has failed to allege causation between Cho's conduct and Plaintiff's harm.   Dkt. No. 52-1 at 5-17.   The County Defendants also argue that the County is not liable because Cho has not committed a constitutional violation, and Plaintiff has failed to allege a claim of municipal liability.   *Id*. at 17-21.[3]

---

[3]In the July 12, 2017 Order, the Court, in allowing leave to amend, specifically instructed Plaintiff to include only "one claim per count."   Dkt. No. 41 at 24-25.   Plaintiff violated that instruction in the FAC by grouping multiple claims against Cho and the County Defendants in Count One.

In her response, Plaintiff argues that her claim under Section 1983 is timely because her claim is "based on malicious prosecution" and the alleged prosecution was terminated in her favor within the two-year statute of limitations.   Dkt. No. 59 at 4-11.[4]   Plaintiff further asserts that her claim of malicious prosecution is "viable" because she has alleged that the prosecution was terminated in her favor, the prosecution was initiated without probable cause, and Cho acted with malice.   *Id*. at 16-18.   Plaintiff also argues that Cho is not entitled to qualified immunity because any reasonable police officer would have known to include the Evidence of Authority in the Police Report.   *Id*. at 18-20.

The Court begins with the issue of timeliness.   The Court agrees with Plaintiff that her claim of malicious prosecution is timely.   Such a claim "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor."   *McDonough v. Smith*, 139 S.Ct. 2156 (2019).   Here, the FAC alleges that the criminal proceedings against Plaintiff for criminal trespass resolved in her favor in January 2015 when the trespass charge was dismissed with prejudice.   FAC at ¶ 127.   Because that date is less than two years prior to the initiation of this lawsuit in December 2016, the claim for malicious prosecution, as alleged, is timely.   *See*

---

[4]Other than her claim of malicious prosecution, Plaintiff does not contend that any other possible claim against the County Defendants is timely under Section 1983.   Therefore, the Court does not address any other such possible claim.

7/12/17 Order at 12 (citing cases for the proposition that, in Hawaiʻi, claims under Section 1983 are subject to a two-year statute of limitations).[5]

The Court turns next to the merits of Plaintiff's malicious prosecution claim. As explained in the August 29, 2017 Order, such a claim has three elements—all of which are strictly construed against Plaintiff: "(1) that the prior proceedings were terminated in the plaintiffs' favor, (2) that the prior proceedings were initiated without probable cause, and (3) that the prior proceedings were initiated with malice."   8/29/17 Order at 5-6 (quotation and citations omitted).

Here, Plaintiff has failed to sufficiently allege, at least, the second and third elements.[6]   As for probable cause, Plaintiff argues that there was none in initiating a criminal trespass proceeding against her.   She argues that Cho had knowledge that she was an invitee of the Church Officers and Cho omitted "significant exculpatory evidence[,]" which she asserts was the Evidence of Authority and the fact that he

---

[5]Plaintiff also asserts that "Defendants have failed to take curative action."   Dkt. No. 59 at 11-16. Almost all of Plaintiff's arguments in this regard, however, concern the *Private* Defendants, not the *County* Defendants.   *See id*. at 16 ("Far from a curative action, the *[Private] Defendants'* control of the Church and denial of access, coupled with the ongoing threat of criminal prosecution, constitutes a longstanding, demonstrable, ongoing denial of [Plaintiff's] constitutional rights.") (emphasis added).   Further, other than her own purported fear of prosecution, Plaintiff identifies not one example where she has been threatened with criminal prosecution, at least not related to her access to the Church or by the County Defendants.   As a result, the Court rejects any contention that the *County* Defendants were required or have failed to provide "curative action."

[6]As in the August 29, 2017 Order, the Court assumes, without deciding, that Plaintiff has alleged the first element by alleging that the charge against her was dismissed with prejudice on speedy trial grounds.   The Court notes, though, that Plaintiff provides no case law on point indicating that such a dismissal constitutes a termination of the proceedings in her favor for purposes of a malicious prosecution claim.   *See* Dkt. No. 59 at 17.

scheduled a SWAT team to appear.   Dkt. No. 59 at 17.   The Court starts with the Evidence of Authority, as it appears to be the principal basis for the contention that Cho omitted exculpatory evidence.   Put simply, the so-called Evidence of Authority exculpates *Plaintiff* from nothing related to her alleged trespass on Church grounds.   At most, the Evidence of Authority−three Church-related documents− shows only that the *Church Officers* were elected as officers of the Church in the first half of 2013.   *See* FAC at ¶ 74.   In other words, those documents have nothing to do with *Plaintiff* or, in particular, her right to be on Church property in November 2013.   As for the presence of the SWAT team, Plaintiff provides no explanation how that alleged fact has anything to do with whether she was trespassing on Church grounds−it does not.

In addition, even if the Evidence of Authority did somehow indicate that *Plaintiff* had, at some point, authority to be on Church property, Plaintiff ignores the alleged facts with which Cho was presented on November 15, 2013.   More specifically, the alleged facts show that Cho was presented with a report that "someone had entered into the [Church] grounds without permission[]" and that numerous individuals had been locked out of the Church, requiring them to "climb over the rock wall."   FAC at ¶¶ 79, 85.   The fact that three individuals had been elected officers of the Church months earlier, which is all the Evidence of Authority showed, did not mean that, in light of the alleged facts, Cho lacked probable cause in

preparing the Police Report because Cho could still have reasonably believed that Plaintiff unlawfully entered the Church. *See Arquette v. State*, 290 P.3d 493, 504 (Haw. 2012) (explaining that probable cause exists where a person "reasonably believes that under [the] facts the claim may be valid under the applicable law"); Haw. Rev. Stat. § 708-815 (providing that "[a] person commits the offense of simple trespass if the person knowingly enters or remains unlawfully in or upon premises."); *Id*. § 708-800 (defining "[e]nter or remain unlawfully" as entering or remaining "when the person is not licensed, invited, or otherwise privileged to do so."). Indeed, having to climb over a rock wall to enter the premises suggests exactly that. Put simply, Cho could have quite easily and reasonably believed that Plaintiff was not licensed, invited, or otherwise privileged to enter the Church grounds when presented with a report of someone entering the Church grounds without permission, individuals that had climbed over a wall to access a locked property, and documents showing only that certain people, other than Plaintiff, had been elected officers of the Church months earlier.

Further, Plaintiff certainly fails to show that Cho is not entitled to qualified immunity on this issue. Qualified immunity protects officials who do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation and internal quotation omitted). "A clearly established right is one that is sufficiently

clear that every reasonable official would have understood that what he is doing violates that right."   *Id*. (quotation omitted).   In her response, Dkt. No. 59 at 18-21, Plaintiff does not even explain the statutory or constitutional right that has been clearly established, let alone case law indicating that Cho violated that right.   *See Mullenix*, 577 U.S. at 12 (explaining that "existing precedent must have placed the statutory or constitutional question beyond debate.").

The FAC also fails to sufficiently allege the element of malice.   In Hawaiʻi, "in order to establish the element of malice for a malicious prosecution claim, a plaintiff must show *inter alia* that the defendant initiated the prior proceeding with the intent, without justification or excuse, to commit a wrongful act and the emphasis is on the misuse of criminal or civil actions as a means for causing harm." *Arquette*, 290 P.3d at 507.   In her response, Plaintiff argues that malice is alleged here because, "in spite of his actual knowledge of the true facts," Cho "became involved in a private dispute, became personally invested with the [Private] Defendants, and used his authority as a law enforcement officer to repeatedly harass and intimidate [Plaintiff]…."   Dkt. No. 59 at 18.   None of the alleged facts, however, indicate malice.   First, to the extent, "in spite of his actual knowledge of the true facts," is meant to reference the Evidence of Authority, as explained above, those documents do not reveal any "true facts" pertinent to this analysis.   Second, the alleged facts do not indicate that Cho became involved in a "private dispute."

Rather, the alleged facts show that Cho responded to a report that someone had entered the Church without permission−in other words, he was doing his job as a police officer.   Third, the alleged facts do not show that Cho became "personally invested" with the Private Defendants.   To the extent this is meant to concern Cho's alleged familial relationship and/or friendship with followers of Macomber, nothing more related to these relationships is alleged in the FAC.   Put simply, without significantly more, there is nothing improper about having family members and friends while being a police officer.   Finally, the alleged facts also do not show that Cho repeatedly harassed and intimidated Plaintiff.   Instead, throughout the FAC, Plaintiff merely uses the words "harass" and "intimidate" as conclusory labels.   *See* FAC at ¶¶ 106, 113, 119, 122, 133, 140, 143, 155.   At most, the allegations in the FAC indicate that Plaintiff *felt* intimidated by Cho and law enforcement in general, not that Cho had the *intent* to intimidate or harass Plaintiff.   *See id*. at ¶¶ 66, 73, 81, 87-88, 98.   In fact, the circumstances alleged by Plaintiff demonstrate precisely the opposite.   By meeting with Plaintiff in advance of the planned November 2013 meeting, Cho appears to have pursued a course of action designed to avoid conflict. Had he wanted to bring the authority of law enforcement to bear on Plaintiff−in other words, to intimidate or harass her−he could have done nothing to dissuade her from participating in the meeting and simply laid in wait, together with his "SWAT

team."   That he did not indicates the *absence of malice*, the converse of which was Plaintiff's burden to establish.

The Court turns next to Plaintiff's claim of municipal liability against the County.   As an initial matter, because the Court found *infra* that Plaintiff has failed to allege that Cho committed a constitutional violation, the County cannot be liable under a theory of municipal liability.   *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).   Nonetheless, as in the July 12, 2017 Order, the Court also addresses herein the merits of Plaintiff's claim.

A plaintiff can allege municipal liability under Section 1983 in one of three ways.   First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action.   *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658, 690 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").   This form of municipal liability also includes when an authorized policymaker approves or ratifies a subordinate's decision and the basis for it.   *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).   Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law.   *Monell*, 436 U.S. at 691 (quotation

16

omitted).   Third, a municipality can be liable for a failure to train its employees

when such failure amounts to deliberate indifference towards the rights of its

inhabitants.   *City of Canton v, Harris*, 489 U.S. 378, 388 (1989).   In addition, a

plaintiff must allege that a policy, custom, or failure to train actually caused a

municipality's employee to commit the constitutional deprivation.   *Id*. at 391;

*Monell*, 436 U.S. at 694.

In the FAC, Plaintiff alleges that the County, through its Police Chief,

"ratified" Cho's alleged conduct by "approving" the Police Report.   FAC at ¶ 123.

For purposes of municipal liability, "ratification requires, among other things,

knowledge of the alleged constitutional violation."   *Christie v. Iopa*, 176 F.3d 1231,

1239 (9th Cir. 1999).   Plaintiff, however, does not allege that the Police Chief was

aware of any constitutional violation or even the basis for Cho's decisions.   Instead,

Plaintiff alleges only that the Police Chief met with Dolly Andrade and made copies

of the Evidence of Authority.   FAC at ¶¶ 70, 76.   Contrary to Plaintiff's argument

in her response, Dkt. No. 59 at 25, the foregoing does not constitute the "intentional

withholding of exculpatory evidence."   Rather, it constitutes the Police Chief

meeting with a member of the public and making copies of documents showing that

three individuals were officers of the Church.   Plaintiff provides no explanation

how the foregoing equates to knowledge of a constitutional violation or the basis for

Cho's decisions.    Therefore, Plaintiff's claim of municipal liability is dismissed for this reason as well.[7]

## 2.    **Count Three**

In the motion to dismiss, the County Defendants argue that Plaintiff has failed to sufficiently allege a conspiracy claim under Section 1985.   Dkt. No. 52-1 at 22-23.   They also argue that, because Plaintiff has failed to allege a Section 1983 claim, her claim under Section 1985 must fail too.   *Id*. at 23.   In response, Plaintiff asserts, in one paragraph, that a sufficient claim under Section 1985 is alleged in the FAC.   Dkt. No. 59 at 26-27.   She argues that a conspiracy is shown by the Private Defendants "conspir[ing]" to use law enforcement, "a conspiracy resulting in a criminal prosecution…," "numerous acts in furtherance of the conspiracy by threats, intimidation, and violence," and "the chilling effect this conspiracy has had on [Plaintiff]…."   *Id*.

At the very least, the Court agrees with the County Defendants unrebutted argument that, because Plaintiff's Section 1983 claim fails, her claim under Section 1985 must also fail.   *See Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.").   Here, there is no dispute that Plaintiff's Section 1985 claim is predicated on the same alleged facts as her

---

[7]The FAC also fails to allege how the Police Chief's conduct *caused* Cho to act the way he did. *See Monell*, 436 U.S. at 694.

Section 1983 claim and, therefore, Count Three is subject to dismissal with respect to all Defendants.[8]

## II.   <u>Substantive Joinder – Count Two</u>

In the August 29, 2017 Order, the Court explained that "all constitutional violations alleged on the part of the Private Defendants hinge on whether the government actors with whom the Private Defendants allegedly conspired violated Andrade's constitutional rights."   Dkt. No. 47 at 11.   That has not changed with the allegations of the FAC.   FAC at ¶ 140.   Therefore, because Plaintiff has failed to allege a constitutional violation against the County Defendants, her Section 1983 claim against the Private Defendants is also dismissed.   *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (stating that "there must always be an underlying constitutional violation[]" for purposes of a Section 1983 conspiracy claim); *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (concluding that a district court properly found that, following the rejection of the plaintiff's claim of a constitutional violation, his conspiracy claim under Section 1983 was "eviscerated" as a matter of law).

---

[8]The Court notes that, substantively, other than using the word "conspiracy" in each of her arguments, Plaintiff provides no valid explanation as to how the FAC alleges a conspiracy between Cho and/or the County and the Private Defendants.   *See Caldeira*, 866 F.2d at 1181 (explaining that, to allege a Section 1985 conspiracy claim, "the plaintiff must show an agreement or 'meeting of the minds' by the defendants to violate his constitutional rights.").   Here, there are no such allegations.   Repeating the word "conspiracy" does not properly allege one.   In addition, there are no allegations that any of the Defendants had "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind their actions.   *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993).

### III.   <u>Leave to Amend is Denied</u>

As explained earlier, in the July 12, 2017 and August 29, 2017 Orders, the Court provided Plaintiff with leave to amend the deficiencies highlighted with her claims.   As discussed herein, Plaintiff has failed to do that.   In particular, Plaintiff has failed to correct the deficiencies with the claims in Count One of malicious prosecution and municipal liability.   Because Plaintiff has been provided with an opportunity to correct Count One, the Court declines to provide leave once again. *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (explaining that a district court's discretion in deciding whether to allow leave to amend is "particularly broad" after leave to amend has already been granted).[9]   Further, the failure to correct the deficiencies with Count One renders unactionable Counts Two and Three as a matter of law.   *See Avalos*, 596 F.3d at 592; *Caldeira*, 866 F.2d at 1182.   Thus, although Count Three was newly raised in the FAC, leave to amend it would be futile in light of the uncorrected deficiencies with Count One.[10]

### <u>CONCLUSION</u>

For the reasons stated herein, the motion to dismiss, Dkt. No. 52, is GRANTED, and all claims are DISMISSED WITH PREJUDICE.   The Clerk is instructed to enter Judgment in favor of Defendants, pursuant to this Order, the July

---

[9]The Court notes that Plaintiff does not request leave to amend the FAC in her response to the motion to dismiss, *see generally* Dkt. No. 59, despite the County Defendants arguing that any such leave should be denied, *see* Dkt. No. 52-1 at 24-25.
[10]The Court also notes that leave to *add* claims, such as Count Three, was *not* granted in the July 12, 2017 Order, only leave to "cure the deficiencies identified in [that] Order." Dkt. No. 41 at 23.

12, 2017 Order (Dkt. No. 41), and the August 29, 2017 Order (Dkt. No. 47).   The

Clerk may then CLOSE this case.

      IT IS SO ORDERED.

      Dated: June 14, 2021 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge